# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39324**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jenon N. MCPHATTER**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 June 2019

———————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 4 months, and reduction to E-1. Sentence adjudged 20 May 2017 by GCM convened at Dover Air Force Base, Delaware.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, HUYGEN, and LEWIS, *Appellate Military Judges.*

Senior Judge HUYGEN delivered the opinion of the court, in which Chief Judge MAYBERRY and Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

HUYGEN, Senior Judge:

Appellant pleaded not guilty to sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] A general court-martial composed of officer and enlisted members found him not guilty of sexual assault but convicted him of attempted sexual assault in violation of Article 80, UCMJ, 10 U.S.C. § 880. The members adjudged a sentence of a dishonorable discharge, confinement for four months, total forfeiture of pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged except for the total forfeiture of pay and allowances, which he did not approve. He deferred all adjudged and mandatory forfeiture of pay and allowances from 3 June 2017 until 1 September 2017, the date of the final action. He also waived mandatory forfeiture of pay and allowances from 25 August 2017, the date of the original action, for a period of six months or release from confinement, whichever was sooner, for the benefit of Appellant's dependent spouse and child.

Appellant raised through his appellate defense counsel two assignments of error (AOE): (1) Appellant's conviction is factually and legally insufficient, and (2) the military judge erroneously instructed the court members that, if "you are firmly convinced that the accused is guilty of any offense charged, you must find him guilty." Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant submitted four AOE: (3) the military judge erred by denying the Defense's challenge for cause of Captain (Capt) TK; (4) the military judge erred by denying the Defense's motion to dismiss for selective prosecution and failure to provide a fair trial; (5) Appellant suffered cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, U.S. CONST. amend. VIII, and Article 55, UCMJ, 10 U.S.C. § 855, when he was subjected to 11 days of solitary confinement in unsanitary conditions and without a working toilet and was not given his prescription medications;[2] and (6) his conviction is factually and legally insufficient on grounds additional to those raised through his counsel. Appellant also filed a supplemental AOE claiming relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), is warranted due to the violation of the 18-month standard for appellate review in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). We find no prejudicial error and affirm the findings and sentence.

---

[1] All references in this opinion to the Uniform Code of Military Justice are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] We have considered AOE (3)–(5), which warrant no further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

## I. BACKGROUND

On the night of 5–6 December 2014, EE[3] and AH went to a squadron holiday party. Before going to the party, AH, the wife of a squadron pilot, knew several squadron members but not Appellant or Master Sergeant (MSgt) DM. EE's only connection with the squadron was through AH and AH's husband, who was out of town and did not attend the party. During the party, EE and AH met MSgt DM for the first time. AH testified at Appellant's court-martial that both women drank alcohol at the party and, after a trip back to AH's house, decided to go to a local bar for the "after-party." EE and AH were at the after-party for some time when EE ordered a drink, bumped into Appellant, and used the men's restroom to wash her hands of her spilled drink. For using the men's restroom, EE was told to leave the bar. EE testified at Appellant's court-martial that standing outside the bar was her last memory of the evening. AH asked MSgt DM for help with EE, who was drunk and having difficulty walking. AH and EE walked to a nearby restaurant accompanied by MSgt DM and Appellant, both of whom had been drinking all night. After getting food, AH drove all four to MSgt DM's off-base house. Once there, EE felt sick and was helped to a bathroom, where she vomited. EE was laid on a couch in the "rec room" and covered with a blanket.

After MSgt DM and AH took a smoke break outside and returned to the rec room, they found EE lying on the couch where they had left her and Appellant sitting on the couch at her feet, watching television. The time was approximately 0100 hours. Intending to move EE upstairs to MSgt DM's bedroom, AH pulled back the blanket and discovered EE was not wearing her pants, which were on the floor next to the couch. MSgt DM testified at Appellant's court-martial that, when MSgt DM saw that EE was not wearing her pants, which she had been wearing when she was laid on the couch, MSgt DM asked Appellant, "What's going on?" Appellant responded, "I didn't do anything. Nothing's going on." AH and Appellant helped EE put on her pants. Appellant picked up EE, put her over his shoulder "fireman style," and carried her upstairs to MSgt DM's bedroom. After Appellant and MSgt DM went back downstairs, AH helped EE get to the bathroom, undress, shower, get dressed in clothes provided by MSgt DM, and lie down under the covers in MSgt DM's bed. AH left the bedroom with the door ajar.

After another smoke break with MSgt DM, AH returned to the bedroom and found the door closed and locked. She "banged" on the door, and Appellant, who was in the bedroom, unlocked and opened the door. EE was still lying on the bed, under the covers. Appellant, who was fully clothed, said that he was

---

[3] At the time of the charged offense, EE's last name began with "e." At the time of Appellant's court-martial, her last name had changed and began with "z."

in the bedroom to help EE in case she vomited again. MSgt DM told Appellant to go downstairs, and AH, MSgt DM, and Appellant went back downstairs.

AH took a third smoke break with MSgt DM, and other partygoers arrived at the house. AH did not see Appellant downstairs and went upstairs to check on EE. When AH walked into MSgt DM's bedroom, EE was lying on the bed and Appellant was lying on top of EE. AH saw EE's bare legs and Appellant's bare buttocks. AH shouted at Appellant, "What the f**k? Aren't you married?" Hearing AH, MSgt DM went upstairs. AH came out of the bedroom and told MSgt DM that Appellant was "inside f**cking her." The light was on in the bedroom. From the doorway, MSgt DM saw Appellant kneeling on the bed, pulling up his pants and thereby covering his bare buttocks. According to MSgt DM, EE was "conscious," rolled over but did not get up from the bed, and looked embarrassed. MSgt DM heard EE telling AH, "It's okay. It's okay. It's nothing my husband hasn't done." MSgt DM told Appellant to go downstairs; Appellant went. AH conferred with MSgt DM and called "911."

When Patrolman AM of the Dover (Delaware) Police Department responded at approximately 0220 hours, he spoke with AH and MSgt DM. He and AH went upstairs. AH woke up EE, who was asleep in MSgt DM's bed and appeared to be "extremely intoxicated." Patrolman AM asked EE what had happened, and she said she did not remember. Patrolman AM went outside, talked with Appellant, and contacted Detective JW, the on-call police detective. Waiting outside the house, MSgt DM saw a police officer talk with Appellant, who said, "Just take me to jail." The officer responded, "[N]o one's going to jail right now." Patrolman AM eventually gave Appellant a ride home because he was intoxicated.

When Detective JW arrived at MSgt DM's house at approximately 0300 hours, he spoke with AH, who went with him to MSgt DM's bedroom. While AH helped EE sit upright, Detective JW asked EE what had happened. According to AH, EE was incoherent. According to Detective JW, EE, who appeared to be intoxicated, "just kept saying I don't remember" and refused to go to a hospital for a sexual assault forensic examination (SAFE). When leaving MSgt DM's house, Detective JW informed the police dispatch that the report of a sexual assault was "unfounded."[4]

The next morning, AH asked EE about what had happened the night before. EE testified that not only did she not remember what happened with Appellant but she did not remember Appellant. At AH's prompting, EE decided

---

[4] Testifying at Appellant's court-martial, Detective JW clarified that he "called in" the incident as "unfounded, no report required." In hindsight, he would have said "no report, no victim cooperation."

to go to a local hospital, where she underwent a SAFE. The sexual assault nurse examiner (SANE) who conducted the SAFE observed a recent laceration in EE's vaginal area, which could have resulted from non-sexual activity or consensual or non-consensual sexual activity. Tests of samples collected by the SANE from EE's vaginal area found no deoxyribonucleic acid, or DNA, from Appellant or any other person. After being notified of the SAFE, Detective JW had an arrest warrant issued for Appellant.

In December 2014, the Air Force requested jurisdiction of the case, but Delaware authorities refused. In March 2016, the Delaware Attorney General's office prosecuted Appellant for the sexual assault of EE. The proceedings ended in a mistrial when the jury could not reach a unanimous verdict. The Attorney General's office was preparing for a new trial when the Air Force again requested jurisdiction, which request was granted in April 2016. Appellant was charged with sexual assault of EE by penetrating her vulva with his penis when she was incapable of consenting due to impairment by alcohol. After being arraigned in October 2016, Appellant was tried by court-martial, convicted, and sentenced in May 2017.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant asserts, both through his counsel and pursuant to *Grostefon*, that his conviction for attempted sexual assault is factually and legally insufficient. We are not persuaded.

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Id.* at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a

reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

In order for Appellant to be found guilty of attempted sexual assault under Article 80, UCMJ, the Government was required to prove beyond a reasonable doubt the following: (1) Appellant did certain overt acts, that is, got in bed with EE and placed his body on top of EE, between her legs, while both were unclothed; (2) the acts were done with the specific intent to commit the offense of sexual assault; (3) the acts amounted to more than mere preparation; and (4) the acts apparently tended to effect the commission of the intended offense of sexual assault. *See Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 4.b. The "overt act" must be a direct movement toward the commission of the intended offense. *Id*. ¶ 4.c.(2). Failure to complete the offense is not a defense. *Id*.

In order for Appellant to be found guilty as charged of sexual assault under Article 120, UCMJ, the Government was required to prove beyond a reasonable doubt the following: (1) Appellant committed a sexual act upon EE, to wit: penetrating her vulva with his penis; (2) Appellant did so when EE was incapable of consenting to the sexual act due to impairment by alcohol; and (3) Appellant knew or reasonably should have known of EE's impairment. *See id*. ¶ 45.b.(3).(f).

### 2. Analysis

Appellant points to "AH's obvious bias and inconsistent testimony" as support for his claim of legal and factual insufficiency. We acknowledge that AH was firmly convinced she knew what had happened between Appellant and EE and nothing anyone, including EE, said would change her mind. From the moment AH saw Appellant's bare buttocks as he lay on top of EE, AH assumed that Appellant was having sexual intercourse with EE, who AH believed to be very drunk. While AH initially characterized Appellant's action as "f**king," her decision soon thereafter to call the police demonstrated her conviction that Appellant had committed a crime.

Furthermore, we recognize that there were several significant inconsistencies (but not ultimately outright contradictions) between AH's testimony at Appellant's civilian trial and her testimony 14 months later at his court-martial. For example, at Appellant's court-martial, unlike at his civilian trial, AH could not recall if EE said anything or looked at AH when AH found EE and Appellant in bed together and yelled at Appellant. When the trial defense counsel asked AH if EE "moved at that point," AH initially and definitively responded, "I know she did not get out of bed." After AH was reminded of her previous testimony at Appellant's civilian trial, she changed her response to "I

do not recall if she got out of bed." The inconsistencies in AH's testimony at Appellant's court-martial are more logically attributed not to the passage of time but to an intent by AH to ensure Appellant was convicted at court-martial after his civilian trial had ended in a "hung jury." But neither the court-martial panel members nor we need give full weight to every aspect of AH's testimony to find Appellant guilty of attempted sexual assault.

The essential evidence that the Government presented to prove the elements of the offense of attempted sexual assault did come from AH, who was the Government's first witness. But MSgt DM was the Government's second witness and had no apparent bias against Appellant, did not have significant inconsistences between his testimony at Appellant's civilian trial and his testimony at Appellant's court-martial, and demonstrated no intent of ensuring Appellant's conviction. We consider it significant that MSgt DM corroborated the basic facts of Appellant's conduct, including those that proved the elements of the offense. It was clear from MSgt DM's testimony describing what MSgt DM saw from the bedroom doorway (Appellant kneeling on the bed on which EE was lying, covering his bare buttocks by pulling up his pants) that Appellant was in bed with EE with his genital area exposed. MSgt DM's testimony about EE's condition and behavior at the restaurant and in his home, witnessed by both Appellant and MSgt DM, also made clear that EE was impaired by alcohol and Appellant knew or reasonably should have known of EE's impairment.

Appellant also points to the absence of "medical, physical, or scientific evidence" of sexual assault, the "exclusively circumstantial" nature of the evidence that EE was incapable of consenting due to impairment by alcohol, EE's lack of memory about a sexual assault, and the dearth of evidence of Appellant's intent to commit a sexual assault. Yet when we consider the evidence in the light most favorable to the Prosecution, we still determine that a reasonable factfinder could have found all the essential elements of attempted sexual assault beyond a reasonable doubt. There is no requirement that, to prove a sexual assault, the Government must present "medical, physical, or scientific evidence." Similarly, there is no requirement that, to prove a victim was incapable of consenting due to impairment by alcohol, the Government must present direct evidence of the incapability or impairment. Circumstantial evidence can suffice. As a matter of proof, EE's lack of memory about what happened after standing outside the bar and before being shaken awake by AH to talk to the police would be problematic if it had not been consistent, but it was. From the first time EE was asked by the police about the possible assault to the last time she described at Appellant's court-martial what she recalled about the night in question, EE never wavered and never remembered anything about the assault or the preceding events that occurred at MSgt DM's

house. Finally, we do not agree there was a lack of evidence of Appellant's intent. He was found with his pants pulled down and genital area exposed, in bed with EE, who was obviously intoxicated.

Considering all the evidence presented by the Government, its strengths as well as its weaknesses but in the light most favorable to the Government, we determine that Appellant's conviction was legally sufficient. Moreover, we have taken an impartial look at the evidence and, applying neither a presumption of innocence nor a presumption of guilt, are convinced of Appellant's guilt beyond a reasonable doubt. Thus, we conclude that Appellant's conviction was also factually sufficient.

## B. The "Reasonable Doubt" Instruction

Appellant contends that the military judge abused his discretion when he instructed the court members that, if "you are firmly convinced that the accused is guilty of any offense charged, you must find him guilty." We disagree.

### 1. Additional Background

At trial, the Defense moved for appropriate relief and requested that the military judge *not* instruct the members that, if they were firmly convinced of the accused's guilt, they *must* convict. Instead, the Defense asked that the military judge instruct the members that, if they were firmly convinced, they *should* convict. The Government opposed the motion and proposed that the military judge use the "standard Air Force instruction on reasonable doubt" and the word "must," not "should." After both parties declined oral argument, the military judge cited *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), and denied the motion.

During preliminary instructions, the military judge instructed the court members:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. . . . If, based upon your consideration of the evidence, you are firmly convinced that the accused is guilty of the offenses [sic] charged, you must find him guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give him the benefit of the doubt and find him not guilty.

The military judge gave an almost identical instruction during findings instructions.

### 2. Law

Whether a military judge appropriately instructed a court-martial panel is a question of law we review de novo. *McClour*, 76 M.J. at 25 (citation omitted).

### 3. Analysis

At the outset, we acknowledge and applaud Appellant's efforts at trial and on appeal to distinguish his case from Senior Airman McClour's, make a timely motion, and preserve the issue. As a result of those efforts, we agree with Appellant that the applicable standard of review is review de novo, not plain error.

Nonetheless, we read the opinion of the United States Court of Appeals for the Armed Forces (CAAF) in *McClour* much as the Government would have us read it. In Senior Airman McClour's court-martial, the military judge instructed the members on reasonable doubt with language nearly identical to that used by the military judge in Appellant's case: "[I]f, based on your consideration of the evidence, you're firmly convinced that the accused is guilty of the offense charged, you must find him guilty." *Id.* at 24. Although the CAAF ended the *McClour* opinion with the sentence "Accordingly, Appellant fails to establish plain error," the immediately preceding sentences dictate our conclusion in Appellant's case:

> Quite plainly, this [instruction] was not a directed verdict. When taken as a whole, the instructions clearly stated the proper burden of proof and left it to the members to determine whether the Government's evidence met that burden. Nothing more is required.
>
> For the foregoing reasons, it cannot be said that any error (if error there were) on the military judge's part in using the word "must" in his burden of proof instruction is clear or obvious.

*Id.* at 26.

Even employing a different, de novo standard of review, we are compelled to apply *McClour* to Appellant's case. By doing so, we conclude that the military judge in Appellant's case did not err, or abuse his discretion, when he gave the "standard" Air Force reasonable-doubt instruction with the word "must" instead of the version of the instruction with the word "should."

We also look to our recent decision in *United States v. Shadricks*, 78 M.J. 720 (A.F. Ct. Crim. App. 2019), *rev. denied*, ___ M.J. ___, 2019 CAAF LEXIS 375 (28 May 2019) (mem.). As did Appellant, Senior Airman Shadricks preserved the issue of the reasonable-doubt instruction at trial and, on appeal, made the argument Appellant now makes: when the issue is reviewed de novo, instead of for plain error, the court is not bound by *McClour* and should conclude instructing court members they "must" convict is error. We decline to do so. Instead, we reiterate what we stated in *Shadricks*. "Nothing about the CAAF's opinion in *McClour* suggests that court would have reached a different result had it applied a de novo standard of review." *Shadricks*, 78 M.J. at 723.

As in *Shadricks*, the military judge in Appellant's case did not err by instructing the court members when they "must" convict.

## C. Timeliness of Appellate Review

Appellant claims that *Tardif* relief is warranted due to the violation of the third *Moreno* standard. We decline to grant such relief.

### 1. Law

We review de novo whether an appellant has been denied the due process right to a speedy appeal. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration," "minimization of anxiety and concern of those convicted," and "limitation of the possibility that . . . grounds for appeal, and . . . defenses . . . might be impaired." *Id.* at 138–39 (citation omitted).

### 2. Analysis

Appellant's case was originally docketed with the court on 19 September 2017. The three-month delay in rendering this decision by 19 March 2019 is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 13 April 2018 and the Government to file its answer on 14 May 2018. The court granted Appellant's motion for leave to file a supplemental AOE for "unreasonable post-trial delay," which was dated 15 March 2019. Appellant did not assert his right to a timely appellate review at any time before he filed the supplemental AOE on 15 March 2019. In that AOE, he made no specific claim of prejudice and we find none.

Finding no *Barker* prejudice, we also find the delay is not so egregious that it "adversely affects the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). As a result, there is no due process violation. *See id.*

Regarding Appellant's specific claim to *Tardif* relief, we determine that no such relief is warranted in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24; *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In *Tardif*, the CAAF recognized that

"a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). Furthermore, we as a service court of criminal appeals are required by Article 66(c), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c); *see Tardif*, 57 M.J. at 224. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(c), UCMJ, authority to grant relief for the three-month delay in completing appellate review.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

11