# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 38908

————————————

### UNITED STATES
*Appellee*

v.

### Alexander S. WHEELER
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 April 2017

————————————

*Military Judge:* Matthew S. Ward (arraignment); Vance H. Spath (trial).

*Approved sentence:* Dishonorable discharge, confinement for 30 months, and reduction to E-1. Sentence adjudged 8 July 2015 by a GCM convened at Mac-Dill Air Force Base, Florida.

*For Appellant:* Major Virginia M. Bare, USAF.

*For Appellee:* Captain Sean J. Sullivan, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, BENNETT, and SPERANZA, *Appellate Military Judges*.

Judge BENNETT delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

————————————

### PUBLISHED OPINION OF THE COURT

————————————

BENNETT, Judge:

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, contrary to his pleas, of attempting to commit a lewd act on a person he believed to be a child who had not yet attained the age of 16 years by intentionally communicating indecent language with an intent to arouse or gratify his own sexual desires, in violation of Article 80, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 880. He was also convicted, contrary to his pleas, of attempting to knowingly persuade, induce or entice a person he believed to be a child who had not yet attained the age of 18 years to engage in sexual activity which, if undertaken, would constitute a criminal offense under Article 120b, UCMJ, 10 U.S.C. § 920b, by means or facility of interstate commerce, to wit: the Internet and cellular telephone, in violation of 18 U.S.C. § 2422(b). The latter offense was charged under clause 3 of Article 134, UCMJ, 10 U.S.C. § 934.

The adjudged sentence was a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence except for the forfeitures. He deferred mandatory forfeitures until the date of action, waived all mandatory forfeitures for a period of six months, and directed that the pay and allowances be paid to Appellant's spouse.

Appellant now asserts: (1) the finding of guilty for Charge II is legally and factually insufficient; (2) the Government was preempted from charging the Article 134 offense; (3) Charges I and II are multiplicious and an unreasonable multiplication of charges; and (4) he was entrapped by law enforcement.[1] We disagree and affirm.

## I. BACKGROUND

Appellant used Craigslist to meet women on the Internet. On 11 April 2014, he responded to a Craigslist advertisement that he initially believed was posted by an 18-year-old female looking for male companionship. The advertisement was actually posted by Air Force Office of Special Investigations (AFOSI) Special Agent WG, a male agent posing as a 14-year-old female. At the time, AFOSI was taking part in a joint law enforcement operation with the Pinellas County Sheriff's Office intended to identify and apprehend individuals who used the Internet to lure minors into having sex.

Communication between Appellant and Special Agent WG, who for the purposes of this operation went by "Gaby," started with email messages on Craigslist and quickly progressed to phone calls. To facilitate the phone conversation, Sergeant AW, a female law enforcement officer from the Pinellas County Sheriff's Office, played the part of "Gaby." Early in his discourse with "Gaby," Appellant was informed that she was 14 years old.

---

[1] Appellant raised the last issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Despite some initial wavering about "Gaby's" purported age, Appellant ultimately overcame his concerns. He intentionally communicated indecent language to "Gaby," masturbated during a telephone conversation with "Gaby," and told her he was doing so. Appellant also induced "Gaby" to meet him so they could engage in sexual activity. For his misconduct, Appellant was charged with these two offenses:

> In that [Appellant] . . . did, at or near Tampa, Florida, between on or about 11 April 2014 and on or about 12 April 2014, attempt to commit a lewd act upon "Gaby", a person [Appellant] believed to be a child who had not yet attained the age of 16 years, by intentionally communicating to "Gaby" indecent language, to wit: stating the accused liked to "jack his dick", stating "Gaby" "can finally touch a dick" and asking whether "Gaby" likes to masturbate, or words to that effect, with an intent to arouse or gratify the sexual desire of [Appellant].[2]

> In that [Appellant] . . . did, at or near Tampa, Florida, between on or about 11 April 2014 and on or about 12 April 2014, attempt to knowingly persuade, induce or entice an individual known to [Appellant] by the screen name "GABY" and the email address [ ]@yahoo.com," as masked by and routed from [ ]@pers.craigslist.org[,] a person [Appellant] believed to be a child who had not attained the age of 18 years, to engage in sexual activity which, if undertaken, would constitute a criminal offense under 10 U.S.C. Section 920b, by means or facility of interstate commerce, to wit: the Internet and cellular telephone, in violation of 18 U.S.C. Section 2422(b), a crime or offense not capital.[3]

The underlying misconduct for both charges occurred during the same time period, between on or about 11 and 12 April 2014, and in the same location, at or near Tampa, Florida. Appellant was charged with attempts because "Gaby" was not an underage girl; rather, she was a fictitious person played by Special Agent WG and Sergeant AW.

---

[2] Charge I and its Specification allege a violation of Article 80, UCMJ, 10 U.S.C. § 880.

[3] Charge II and its Specification allege a violation of Article 134, UCMJ, 10 U.S.C. § 934.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant avers that his conviction under Charge II for enticement should be set aside because the evidence is both legally and factually insufficient to prove that he attempted to persuade, induce, or entice "Gaby," a child under the age of 18, to engage in sexual activity that would constitute a crime under of Article 120b, UCMJ, in violation of 18 U.S.C. § 2422(b). In Appellant's view, he tried to end his interaction with "Gaby" once he learned she was underage, and it was "Gaby" who attempted to persuade, induce, or entice him to engage in sexual activity. We disagree.

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

As charged, the elements of the Specification of Charge II are:

> (1) That Appellant did, at or near Tampa, Florida, between on or about 11 April 2014 and 12 April 2014, attempt to knowingly persuade, induce, or entice an individual known to him by the screen name "Gaby" and the email address [ ]@yahoo.com, as masked by and routed from [ ]@pers.craigslist.org, to engage in sexual activity;

(2) that Appellant used a means of interstate commerce to do so;

(3) that Appellant believed "Gaby" was a child who had not attained the age of 18 years;

(4) that Appellant intended to persuade, induce, or entice "Gaby" to engage sexual activity which, if undertaken by Appellant and "Gaby," would constitute a criminal offense under Article 120b, UCMJ, 10 U.S.C. § 920b; and

(5) that Appellant's acts amounted to more than mere preparation; that is they were a substantial step toward the commission of the intended offense (i.e., the persuasion, inducement, or enticement of "Gaby").

In this case, the evidence consisted of, *inter alia*, testimony from Special Agent WG and Sergeant AW, Craigslist email transcripts, recorded telephone calls, and a video recording of Appellant's post-apprehension law enforcement interview—all of which provide ample evidence of Appellant's guilt.

First, we find that Appellant, at or near Tampa, Florida, between on or about 11 April 2014 and 12 April 2014, attempted to knowingly persuade, induce, or entice a person known to him as "Gaby" to engage in sexual activity. Appellant knowingly answered "Gaby's" advertisement for male companionship. He then began a dialogue with her over the Internet and by cellular phone, the purpose of which was, among other things, to convince "Gaby" to engage in some kind of sexual activity with him.

Second, we find that Appellant used a means of interstate commerce to attempt to knowingly persuade, induce, or entice "Gaby" to engage in sexual activity. Appellant relied on his email exchanges with "Gaby" and their cellular phone conversations to encourage her. His use of the Internet and his cellular phone, as a matter of law, constitutes a means of interstate commerce. *See United States v. Pierce*, 70 M.J. 391, 395 (C.A.A.F. 2011).

Third, we find that Appellant believed "Gaby" was a child who had not attained the age of 18 years. In fact, Appellant believed "Gaby" was just 14 years old. The law enforcement officers pretending to be "Gaby" informed Appellant that "Gaby" was 14 years old and sent Appellant photos of a female child around that age. On more than one occasion, Appellant remarked that "Gaby" was too young and that it would be illegal for him to engage in sexual activity with her, or words to that effect. Appellant's own remarks to "Gaby" and the admissions he later made to law enforcement personnel evidence his belief that "Gaby" was under the age of 18.

Fourth, we find that Appellant intended to persuade, induce, or entice "Gaby" to engage in sexual activity which, if undertaken by Appellant and

"Gaby," would constitute a criminal offense under Article 120b, UCMJ.[4] To establish attempt under 18 U.S.C. § 2422(b), the Government must prove that the accused: "(1) had the intent to commit the substantive offense, and (2) took a substantial step toward persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity." *United States v. Schell*, 72 M.J. 339, 345–46 (C.A.A.F. 2013). Here, the substantive offense was the persuasion, inducement, or enticement of "Gaby" to engage in sexual activity that would be illegal under Article 120b, UCMJ. *Id.* at 345.

The circumstance under which Appellant's passive and overt cajoling took place is a critical fact linking Appellant's actions to his intent to win "Gaby's" agreement. "Gaby," supposedly bored and lonely, posted an advertisement on Craigslist searching for companionship, preferably from a male servicemember. Appellant, using the alias "Bob Buckhorny," answered the call. From that moment until the time of his apprehension, through an extended dialogue via email and over his cellular phone, Appellant cajoled "Gaby."

Their interaction was not random, and Appellant's intentions were made clear from the start. Appellant provided several pictures of himself, including one in which he posed topless. He asked "Gaby" to send him naked pictures of herself, which she did not do. However, Appellant did receive from "Gaby" a picture of a clothed 14-year-old female, after which he complimented "Gaby" on her looks.

When the content of their dialogue turned sexual—and it did multiple times during their exchanges—Appellant repeatedly told "Gaby" that he did not mind that she was "inexperienced," that her lack of experience was good, that "he would not be disappointed" in her, and that he would "show her the ropes." He did this in an effort to assuage her concerns. He also told "Gaby"

---

[4] Article 120b(a), (b), and (c), UCMJ, 10 U.S.C. § 920b(a), (b), (c), prohibit rape, sexual assault, or sexual abuse of a child. The article makes it illegal for servicemembers to engage in sexual activity with children under the age of 16, including "sexual acts" such as "contact between the penis and vulva or anus or mouth" and "sexual contact" such as "touching, or causing another person to touch . . . any body part . . . if done with the intent to arouse or gratify the sexual desire of any person." Article 120b(h), UCMJ; *see also* Article 120(g), UCMJ. Based on Appellant's admissions, his dialogue with "Gaby," and the fact that he arrived at their rendezvous location with a condom, we are convinced that the sexual activity Appellant was attempting to persuade, induce, or entice "Gaby" to undertake would constitute a criminal offense under Article 120b, UCMJ.

that he was not bothered by the fact that she was only 14 and that he could fix her "lonely problem." When she asked him what he wanted to do when they met, Appellant told "Gaby" that they could kiss, make out, and touch each other. Appellant would have had no reason to say these things if he was not intending to persuade, induce, or entice "Gaby" to engage in some type of sexual activity.

Appellant eventually drove to their planned meeting spot and was apprehended with a condom in his pocket. After his apprehension, he told investigators that he was looking for someone to have sex with when he answered "Gaby's" Craigslist advertisement and his only fear was getting caught.[5] Appellant also told investigators that he saw an opportunity and that he wanted to meet "Gaby" and "engage with her."

These facts, among others, overwhelmingly demonstrate that Appellant intended to persuade, induce, or entice "Gaby" to engage in sexual activity with him.

Finally, Appellant's acts amounted to more than mere preparation; that is, these acts were a substantial step toward the commission of the intended offense (i.e., the persuasion, inducement, or enticement of "Gaby"). In *Schell,* the United States Court of Appeals for the Armed Forces (CAAF) noted that, within the context of an 18 U.S.C. § 2422(b) offense, "persuade," "induce," and "entice," are all effectively synonymous, meaning "leading or moving another by persuasion or influence, as to some action [or] state of mind." 72 M.J. at 343 n.1 (quoting *United States v. Engle*, 676 F.3d 405, 411 n.3 (4th Cir. 2012)) (quotation marks omitted); *see also United States v. Thomas*, No. ACM 37896, 2013 CCA LEXIS 667, at *22 (A.F. Ct. Crim. App. 2 Jul. 2013) (unpub. op.) (holding that 18 U.S.C. § 2422(b) criminalizes an accused's intentional effort to achieve "a certain mental state in [a] minor—namely, [his or] her agreement" to engage in a sexual act that would be illegal if it occurred.).

The emails sent by Appellant to "Gaby," the recordings of his cellular phone conversations with "Gaby," and Appellant's admissions prove his acts amounted to more than mere preparation. Moreover, the CAAF has also noted that an accused's travel to a location to meet a minor can constitute a "substantial step" and thus constitute an attempt to violate 18 U.S.C. § 2422(b). *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (citations omitted). Taken as whole, there is overwhelming evidence that Appellant was

---

[5] At the time, Appellant was 26 years old. It is not a crime for a 26 year old male to spend time with a 14-year-old female. The only reason Appellant had to fear getting caught was because he was trying to convince "Gaby" to engage in sexual activity, something he believed would be illegal because he thought she was only 14.

indeed attempting to influence "Gaby" so she would engage in sexual activity with him, and he took substantial steps toward doing so.

Appellant argues that "Gaby" was the pursuer. We are not persuaded. Appellant may have had fleeting second thoughts about meeting "Gaby" because he thought she was too young, believed it would be illegal to engage in sexual activity with her, and/or was afraid he would get caught. Regardless, Appellant ultimately decided to contact "Gaby" to try to convince her to engage in sexual activity with him.

We have considered the evidence in the light most favorable to the prosecution. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction. Furthermore, we are, ourselves, convinced of his guilt beyond a reasonable doubt; thus, the evidence is also factually sufficient to support this conviction.

## B. Preemption

On appeal, Appellant contends that the military judge erred when he ruled that the "pre-emption doctrine" did not prohibit the Government from charging Appellant with an Article 134, UCMJ, offense for a crime that Appellant argues should have been charged as an attempted violation of Article 120b, UCMJ, 10 U.S.C. § 920b. We disagree.

This court reviews questions of statutory interpretation, including preemption, de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015); *United States v. Benitez*, 65 M.J. 827, 828 (A.F. Ct. Crim. App. 2007).

At Appellant's court-martial, the military judge denied his motion to dismiss Charge II, stating:

> Section 2422(b) criminalizes using a particular meaning [sic] or medium to persuade, induce, or entice a child in order to get them to engage in a particular act – a sexual act. The type of language used is not the issue rather it is the effort to induce, entice, or persuade a child to engage in a sexual act through the use of interstate commerce. Congress in [Article 120b, UCMJ] was not attempting to regulate interstate commerce crimes. What it was criminalizing was engaging in lewd acts with children. Lewd acts including language that is indecent when it is communicated to a child. What [Article 120b] lacks is both interstate commerce and the intent to have a child engage in a sexual act during the transmission of the language through means of interstate commerce. Given this, preemption does not apply to the Specification of Charge II.

The preemption doctrine "prohibits application of Article 134 to conduct covered by Articles 80 through 132." *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 60.c.(5)(a) (2012). In *United States v. Kick*, 7 M.J. 82 (C.M.A. 1979), our superior court referred to the preemption doctrine as the:

> legal concept that where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element. However, simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

*Id.* at 85 (citations omitted); *see also United States v. Erickson*, 61 M.J. 230 (C.A.A.F. 2005).

Accordingly, the preemption doctrine only precludes prosecution under Article 134, UCMJ, where two elements are met: "(1) 'Congress intended to limit prosecution for . . . a particular area' of misconduct 'to offenses defined in specific articles of the Code,' and (2) 'the offense charged is composed of a residuum of elements of a specific offense.'" *United States v. Curry*, 35 M.J. 359, 360–61 (C.M.A. 1992) (quoting *United States v. McGuinness*, 35 M.J. 149, 151–52 (C.M.A. 1992)) (omission in original); *see also United States v. Wright*, 5 M.J. 106 (C.M.A. 1978).

In *Schell*, the CAAF analyzed the legislative history of 18 U.S.C. § 2422, the same statute incorporated by Appellant's second charge, and found that:

> Congress intended the statute "to address those who lure children out to actually engage in illegal sexual activity," *Schell*, 71 M.J. at 579, but also to more broadly "protect children and families from online harm." H.R. Rep. No. 104-458 (1996); H.R. Rep. No. 104-652, § 508, at 1130 (1996) (Conf. Rep.). There is nothing in the legislative history suggesting that an accused had to intend to actually engage in a sexual crime. H.R. Rep. No. 104-652, § 508, at 1130 ("Section 508 would amend [§ 2422(b)] to prohibit the use of a facility of interstate commerce . . . for the purpose of luring, enticing or coercing a minor into prostitution or a sexual crime for which a person could be held criminally liable, or attempt to do so.").

72 M.J. at 343–44.

Consistent with the plain language of Article 120b, UCMJ, 18 U.S.C. § 2422(b), and the holding in *Schell*, we find that the Article 134 clause 3 offense Appellant was charged with is not composed of a residuum of elements of any of the other enumerated UCMJ offenses. *See United States v. Hill*, No. ACM 38848, 2016 CCA LEXIS 291, at *7 (A.F. Ct. Crim. App. 9 May 2016) (unpub. op.) ("Federal law recognizes enticement of a minor to engage in illegal sexual activity as a distinct offense. *Compare* 18 U.S.C. §§ 2422, 2427 *with* 18 U.S.C. §§ 2251, 2252, 2252A."); *cf. United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391 (A.F. Ct. Crim. App. 30 Jun. 2016) (unpub. op.). We find that the defining characteristic of a violation of 18 U.S.C. § 2422(b), as it was charged in this case, is the "enticement" element. With respect to 18 U.S.C. § 2422(b), Congress intended to criminalize adult use of a means of interstate commerce to intentionally "persuade, induce, or entice" a minor into engaging in sexual activity. *Schell*, 72 M.J. at 343–44; *see also United States v. Brooks*, 60 M.J. 495, 498 (C.A.A.F. 2005); *Thomas*, 2013 CCA LEXIS 667, at *22 (unpub. op.). In its current form, this is a harm that the UCMJ does not specifically address. Under the circumstances, the Government was not preempted from charging Appellant, under clause 3 of Article 134, UCMJ, for attempting to "persuade, induce, or entice" a minor into engaging in sexual activity, in violation of 18 U.S.C. § 2422b.

## C. Multiplicity and Unreasonable Multiplication of Charges

On appeal, and for the first time, Appellant argues that the offenses he was convicted of are unconstitutionally multiplicious because his attempted lewd act, charged under Article 80, UCMJ, and his attempted enticement of a minor, charged under Article 134, UCMJ, are based on the same underlying misconduct. Alternatively, he argues these offenses were unreasonably multiplied. We disagree.

Multiplicity in violation of the Double Jeopardy Clause[6] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). The Supreme Court has established the following "separate elements test" for analyzing multiplicity issues: "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Accordingly, an accused

---

[6] U.S. CONST. amend. V.

may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376–77 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015).

This court normally reviews multiplicity claims de novo. *See Anderson*, 68 M.J. at 385. However, an appellant forfeits a multiplicity claim, unless the specifications are "facially duplicative," by not raising the issue at trial. *United States v. Parker*, 73 M.J. 914, 917 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Campbell*, 68 M.J. 217, 219–20 (C.A.A.F. 2009)); *see also United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009) (distinguishing forfeiture from waiver of multiplicity claims). Whether the specifications are facially duplicative, i.e., factually the same, is a question of law reviewed de novo. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). Specifications are not facially duplicative if each requires proof of a fact not required to prove the others. *Campbell*, 68 M.J. at 220.

Here, each specification required proof of facts not required to prove the other. The attempted lewd act specification required proof that Appellant intended to communicate indecent language to a child for the purpose of gratifying his own sexual desire. Factually, it differs from the attempted enticement specification. The latter required proof that Appellant intended to use a means of interstate commerce to persuade, induce, or entice another person—a child—to engage in sexual activity with him that, if undertaken, would have violated Article 120b, UCMJ. Appellant has not met his burden to show that the specifications are facially duplicative and thus has forfeited this issue.

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial (R.C.M.) 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *Campbell*, 71 M.J. at 23.

In *United States v. Quiroz*, the CAAF endorsed the following non-exhaustive list of factors to consider in determining whether an unreasonable multiplication of charges has occurred:

> (1) whether the accused objected at trial;

(2) whether each charge and specification is aimed at distinctly separate criminal acts;

(3) whether the number of charges and specifications misrepresent or exaggerate the appellant's criminality;

(4) whether the number of charges and specifications unreasonably increase the appellant's punitive exposure; and,

(5) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

55 M.J. 334, 338–39 (C.A.A.F. 2001). These non-exclusive factors are weighed together, and "one or more factors may be sufficiently compelling." *Campbell*, 71 M.J. at 23.

Appellant did not object at trial. We find that the charges were aimed at distinctly separate criminal acts, do not misrepresent or exaggerate his criminality, and do not unreasonably increase his punitive exposure. The gravamen of each offense was different. Regarding the attempted lewd act, Appellant made graphic sexual comments to "Gaby" and asked her questions of a graphic sexual nature. That these communications did in fact arouse or gratify his own sexual desires was demonstrated by evidence that he masturbated on one occasion while he communicated indecent language to "Gaby." The attempted enticement offense, on the other hand, focused on a different phase of Appellant's communications where he attempted to "knowingly persuade, induce, or entice" "Gaby" into engaging in sexual activity that would have constituted a criminal offense under Article 120b, UCMJ. The communication between Appellant and "Gaby" that led to their agreement to meet involved a significant amount of cajoling, both passive and overt, beyond the graphic sexual comments and questions that aroused or gratified Appellant's sexual desires. The purpose of this cajoling was to convince "Gaby" to engage in sexual activity. Finally, there is no evidence of overreaching on the part of the prosecution.

Appellant asks us to align our decision with our sister court's holding in *United States v. Ashley*, No. ARMY 20120566, 2013 CCA LEXIS 601 (Army Ct. Crim. App. 31 July 2013) (unpub. op.). However, we find *Ashley* to be distinguishable for a variety of reasons including the following. First, Ashley was charged with different crimes. Unlike Appellant, Ashley was not charged with attempting to commit a lewd act, under Article 80, UCMJ, 10 U.S.C. § 880 and the current version of Article 120b. In addition to being charged with attempted enticement of a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b), Ashley was charged with communicating indecent language, and both crimes were charged as Article 134, UCMJ, 10 U.S.C. § 934 (2006) offenses. This is significant because for Ashley there was no question of whether his indecent language was communicated with the intent to arouse or

gratify his own sexual desires, as was the case for Appellant. Second, our sister court found that "[Ashley's] admitted indecent language was identical and a subset of the very same language supporting the attempted enticement charge." *Ashley*, 2013 CCA LEXIS 601, at *8-9 (unpub. op.). Again, for the reasons provided above, we find that the misconduct underlying Appellant's attempted lewd act and his attempted enticement amounted to separate communications.

Thus, we find there was no unreasonable multiplication of charges.[7]

## D. Entrapment

Appellant argues that by playing on his sympathies, for example by having "Gaby" claim to be lonely and in need of attention, law enforcement agents improperly induced him to commit the charged offenses. We disagree.

Entrapment is an affirmative defense when "the criminal design or suggestion to commit the offense originated with the Government and the accused had no predisposition to commit the offense." R.C.M. 916(g). As with all affirmative defenses, if an appellant was entrapped, he would not be criminally responsible. R.C.M. 916(a).

> The defense has the initial burden of going forward to show that a government agent originated the suggestion to commit the crime . . . [and] the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense prior to first being approached by Government agents.

*United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (citations and quotation marks omitted). When an appellant generally challenges whether the quantum of proof was sufficient to disprove the existence of an affirmative defense, we analyze that assertion under the factual and legal sufficiency framework articulated above. *See United States v. Ward*, 39 M.J. 1085, 1089 (A.C.M.R. 1994);

---

[7] When a factfinder "'return[s] guilty findings for [multiple] specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent' [upon the military judge] either to consolidate or dismiss [the contingent] specification[s]." *United States v. Elespuru*, 73 M.J. 326, 329–30 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467–68 (C.A.A.F. 2013)) (additional citation omitted). In a record completely barren of any mention of charging in the alternative, Appellant's argument that the specifications were charged in the alternative is not compelling.

*cf. United States v. Rivera*, 54 M.J. 489, 490 (C.A.A.F. 2001) (applying the legal sufficiency framework to analyze claim evidence was insufficient to disprove defense of parental discipline).

The essence of entrapment is an improper inducement by government agents to commit the crime. *United States v. Howell*, 36 M.J. 354, 359 (C.M.A. 1993). Such improper inducement does not exist if government agents merely provide the opportunity or facilities to commit the crime. Instead, for entrapment, the government conduct must:

> create[] a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense . . . [and may take the form of] pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship.

*Id.* at 359–60 (citations and quotation marks omitted). For example, a government agent's repeated requests for drugs "do not in and of themselves constitute the required inducement" to establish entrapment. *Id.* at 360.

Plainly, Appellant was not an undisposed person. After reviewing all the evidence, we find, beyond a reasonable doubt, that nothing in the remarks or questions of Special Agent WG or Sergeant AW caused Appellant to commit his crimes. While the law enforcement officers may have been persistent, we find that the evidence adduced at trial proves that Appellant, on his own and without improper inducement, attempted to commit a lewd act upon "Gaby," a person he believed to be a child under the age of 16 years, by intentionally communicating to "Gaby" indecent language. Specifically, we find that Appellant did tell "Gaby" that he liked to "jack his dick," that she "can finally touch a dick," and asked whether "Gaby" liked to masturbate, or words to that effect, with an intent to arouse or gratify his own sexual desire. For reasons already discussed, we also find the evidence proves that Appellant pursued "Gaby" with the intent to persuade, induce, or entice her into engaging in sexual activity with him, and not the other way around. We find that the evidence, when viewed in the light most favorable to the government, could convince a reasonable fact finder beyond a reasonable doubt that Appellant was not entrapped. Furthermore, we are convinced beyond a reasonable doubt that Appellant was not entrapped.

## III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a)

and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[8]

FOR THE COURT

MICAH L. SMITH
Deputy Clerk of the Court

---

[8] We note, however, an error in the convening authority's action and General Court-Martial Order (CMO). The military judge awarded six months' credit against Appellant's sentence to confinement for illegal pretrial *punishment*. Yet, the action and CMO erroneously state that Appellant received credit for illegal pretrial *confinement*. We find no prejudice but order promulgation of a corrected action and CMO to ensure accurate court-martial records.