# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

## No. ACM 39886

————————

### UNITED STATES
*Appellee*

**v.**

### Daniel G. HELPINGSTINE
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 May 2021

————————

*Military Judge:* Bryon T. Gleisner (arraignment); Andrew R. Norton.

*Sentence:* Sentence adjudged on 18 November 2019 by GCM convened at Scott Air Force Base, Illinois. Sentence entered by military judge on 2 March 2020: Dishonorable discharge, confinement for 3 years, reduction to E-1, and a reprimand.

*For Appellant:* Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge MEGINLEY joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, contrary to his pleas, of two specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1],[2] Appellant was sentenced to a dishonorable discharge, confinement for three years, reduction to the grade of E-1, and a reprimand. The convening authority granted a deferment then waiver of automatic forfeitures of pay and allowances, and provided the wording of the adjudged reprimand; he took no additional action on the sentence.[3]

Appellant raises one issue on appeal: whether the evidence is legally and factually sufficient to support the convictions. Finding no error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

The offenses for which Appellant was convicted involved Appellant's stepdaughter, ER, and both occurred in the family home in the vicinity of Colorado Springs, Colorado, near Peterson Air Force Base. At the time of the offenses in 2017 and 2018, ER was 10 or 11 years old.

ER's first memory of Appellant is when he proposed marriage to her mother, ERH; ER was around 7 years old. Appellant married ERH in 2013. They all lived together briefly, then ERH and ER moved to Arizona while Appellant was assigned to Lajes Field, Portugal. In 2015, the family, which now included an infant daughter, all moved to Colorado. Appellant and ERH had two more children together; the third was born after the last offense. ER called Appellant "Dad."

ER's bedroom was separated from the others, on a lower floor of the house. ER—and perhaps also ERH—often slept in the clothes they planned to wear the next day. ER wore a uniform to school.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.), unless otherwise noted.

[2] Appellant pleaded, and was found, not guilty of two specifications of possession of child pornography, charged as violations of Article 134, UCMJ, 10 U.S.C. § 934.

[3] Consistent with the respective opinions of the judges of this panel in *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.), we find no error in the convening authority's decision to take no further action on the sentence in this case.

The first offense was sometime during the first half of ER's fifth-grade school year in 2017. ER's sister wanted to sleep with her and wanted Appellant to read her a bedtime story. Appellant complied, and they all lay on the bed in ER's bedroom. First ER's sister then ER fell asleep. ER remembers waking up because she "felt a large, warm hand down [her] pants." She felt it touching her skin, specifically her "privates." ER believed it was Appellant's hand because "[her] sister didn't have a large hand and [Appellant] was the only one next to [her]." ER then "turned around so [Appellant] couldn't reach [her]" and [Appellant] slipped his hand out." ER went back to sleep. She hoped it was a dream.

The second offense occurred in March 2018. The family was moving from Colorado to Illinois and most of the furniture was already gone from the house. The family all slept in a family room. ER and her young sister were on a sleeping bag on the ground; ERH and her infant son were on a queen-size air mattress; and Appellant was on a twin-size air mattress or with ERH and their son on the queen-size mattress. ERH recalled that Appellant was on the mattress with her and at some point during the night got up. ERH described Appellant as "[a] hot sleeper," meaning he felt hot and was noticeably warm to the touch.

ER testified that she remembered "waking up to something warm in [her] pants and [she] found — [Appellant] was touching [her] privates with his hand." She did not look at him, but knew it was him and no one else "because [her] baby sister did not have hands that large and [Appellant] was the only other person next to [her]." She felt him touching her skin under her underwear, in the same place as before. In response, ER turned away and Appellant "pulled his hand out." ER testified to being confused about why Appellant would do that to her. ER went back to sleep. She now believed neither touching was a dream. ER did not report Appellant's conduct at that time, and the family moved to Illinois as planned.

ER reported the touchings by Appellant after an activity at her school in Illinois. During this time, Appellant was away from the home on a temporary-duty assignment, as he often had been since they moved to Illinois. A counselor talked to ER's PE class about sexual harassment and sexual assault. The students were provided a slip of paper which asked whether they wanted to talk to a counselor. ER "debated for a while whether [she] wanted to or not, but [she] checked yes." A different counselor contacted ER to follow up on ER's submission. ER told this second counselor about Appellant's offenses.[4] After they talked, that counselor called "the proper authorities," who interviewed ER

---

[4] Neither counselor testified at trial.

then told ERH about the allegations. Eventually, ERH moved herself and her children from Illinois to Arizona, where ERH had family.

Air Force Office of Special Investigations (AFOSI) investigated ER's allegations against Appellant. AFOSI agents met Appellant upon his return from his temporary duty. In the subsequent recorded interview with AFOSI agents, Appellant denied touching ER inappropriately. AFOSI agents searched Appellant's cell phone and, in the browser history, found terms related to sexual acts with children, including daughters.

## II. DISCUSSION

Appellant asserts that his "conviction for the Specifications of Charge I is legally and factually insufficient due to the Charge being supported by an uncorroborated witness with an extensive history of false statements." Appellant also argues that ER had a motive to lie about him. We find the evidence for the two offenses of which Appellant was convicted was legally and factually sufficient.

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The "government is free to meet its burden of proof with circumstantial evidence." *King*, 78 M.J. at 221 (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a

reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

While we have the independent authority and responsibility to weigh the credibility of the witnesses in determining factual sufficiency, we recognize that the trial court saw and heard the testimony. *See United States v. Moss*, 63 M.J. 233, 239 (C.A.A.F. 2006) (stating it is the members' role to determine whether testimony is credible or biased).

### 2. Analysis

The elements of each specification of the Charge alleging sexual abuse of a child under 12 years old in violation of Article 120b, UCMJ, for which Appellant was convicted included: (1) that at the time and place alleged, Appellant committed a lewd act upon ER by intentionally touching her vulva beneath her clothes with his hand; (2) that Appellant did so with the intent to gratify his sexual desire; and (3) that ER had not attained the age of 12 years. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 45b.b.(4)(a). "[S]exual contact with a child" is a "lewd act," and includes touching directly or through the clothing any body part of another person to gratify the sexual desire of any person. *MCM*, pt. IV, ¶¶ 45b.a.(h)(5)(A), 45.a.(g)(2)(B).

The Government's primary evidence for both specifications was the testimony of ER. Appellant does not dispute that ER testified to facts sufficient to prove each element. Rather, Appellant asserts ER was not to be believed because no one corroborated her accounts, and she had "an extensive history of false statements." First, we dismiss the notion that a victim's testimony must be corroborated to be believed. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006) ("The testimony of only one witness may be enough . . . so long as the members find that the witness's testimony is relevant and is sufficiently credible."). Indeed, one may believe the testimony of one witness and disbelieve the testimony of one or more other witnesses whose testimony conflicts with the one. *See Weiler v. United States*, 323 U.S. 606, 608 (1945). In the present case, however, the testimony of ER's mother—the only other person present at either offense besides Appellant and one or more young children—was not inconsistent with ER's testimony. And based on ER's testimony about how the offenses occurred, one would not expect ERH to have witnessed the conduct. Moreover, no evidence suggests ER knew about Appellant's Internet searches or otherwise believed he had a sexual interest in children and daughters, then fabricated allegations he sexually abused her.

Furthermore, we are unconvinced ER had such an extensive history of lies that she cannot be believed. During her testimony at trial, ER admitted lying to her parents, grandmother, and teachers about issues relating to school. The evidence does not indicate ER made false statements about the facts and circumstances surrounding her allegations against Appellant, either before or during trial.

Similarly, we do not find ER's bias against Appellant renders her testimony unworthy of belief. ER admitted at trial that she did not like Appellant disciplining her, that she felt he treated his biological children better than her, and that she "tr[ied] to push his buttons to make him angry." They argued often. She admitted she strongly disliked Appellant at the time of the offenses. While this bias could be the genesis to fabricate the allegations against Appellant, ER also had reasons not to allege Appellant sexually abused her. ER testified that she did not tell her mother what happened immediately afterwards because she "did[ not] want to ruin their marriage." She also said she knew making these allegations would tear her family apart; she did not want to "leave [her] siblings without a dad, an incomplete family." Indeed, ER's allegations had just that effect. ERH testified that, as a consequence of making these allegations, ER felt "sad that her brother and sister weren't going to have a father in their lives." ER affirmed that she did not make up these allegations and agreed she would not lie about something that could get Appellant "in serious trouble."

In assessing legal sufficiency, we are limited to the evidence produced at trial and are required to consider it in the light most favorable to the Government. ER testified that Appellant touched her "privates" under her clothes with his hand on both occasions. In addition to the circumstances surrounding the touchings, one can infer Appellant's sexual intent from evidence of Appellant's browser searches relating to a sexual interest in children and daughters. We conclude a rational factfinder could have found beyond a reasonable doubt all the elements to support Appellant's convictions of sexual abuse of a child against ER. Furthermore, in assessing factual sufficiency, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's convictions of sexual abuse of a child against ER both legally and factually sufficient.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles

59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.[5]



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[5] We note the Statement of Trial Results failed to include the command that convened this court-martial as required by R.C.M. 1101(a)(3). Appellant has claimed no prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).