# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40397

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dennis A. GEORGE, Jr.**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 June 2024

————————————

*Military Judge*: Michael A. Schrama.

*Sentence*: Sentence adjudged on 19 August 2022 by GCM convened at Joint Base Langley-Eustis, Virginia. Sentence entered by military judge on 17 October 2022: Dishonorable discharge, confinement for 5 months, and reduction to E-1.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Colonel Zachary T. Eytalis, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and MASON, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Judge DOUGLAS and Judge MASON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Senior Judge:

Appellant was tried and convicted, contrary to his pleas, by a general court-martial composed of officer and enlisted members, of one specification of attempted sexual assault without consent, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for five months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings, disapproved the reprimand, and approved the remainder of the sentence.[3]

Appellant raised seven issues on appeal, which we have reworded: (1) whether Appellant's conviction for attempted sexual assault is legally and factually sufficient; (2) whether the military judge erred in instructions to the members on the elements of the offense; (3) whether Appellant was denied his right to a unanimous verdict; (4) whether 18 U.S.C. § 922 is constitutional; (5) whether the military judge erred in denying a defense challenge for cause; (6) whether the military judge erred in refusing to instruct the members on a witness's prior inconsistent statement; and (7) whether the victim's written unsworn statement contained impermissible content.[4,5]

We find Appellant affirmatively waived issue (2). *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) ("[By] affirmatively declin[ing] to object to the military judge's instructions and offer[ing] no additional instructions[,] . . . [a]ppellant waived all objections to the instructions, including in regard[ ] to the elements of the offense." (Citations omitted)). Given the changes to Article 66(d)(1)(A), UCMJ, 10 U.S.C. § 866(d)(1)(A), in which Congress removed the phrase "should be approved," we no longer have the ability to pierce waiver with regard to findings to address what would otherwise be

---

[1] References to the punitive articles are to the *Manual for Courts-Martial, United States* (2019 ed.). Unless otherwise noted, all other references to the UCMJ are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] Appellant was found not guilty of one specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920.

[3] The convening authority denied Appellant's request to reduce his confinement by a month.

[4] Appellant personally raised issues (5), (6), and (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] This court specified one additional issue (8) whether the specification for attempted sexual assault without consent failed to state an offense by omitting a necessary element of the inchoate offense, to wit: a certain overt act. We have carefully considered this issue and find it does not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

prejudicial error.[6] *See United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted) (holding service Courts of Criminal Appeals' (CCA) ability to pierce waiver was predicated on the phrase "should be approved" in the prior versions of the *Manual for Courts-Martial* under Article 66, UCMJ); *see also United States v. Coley,* ARMY 20220231, 2024 CCA LEXIS 127, at \*8–9 (A. Ct. Crim. App. 13 Mar. 2024) (unpub. op.) (holding the 2021 amendment to Article 66(d), UCMJ, abrogated the CCAs' ability to pierce waiver as to errors associated with findings (citations omitted)).

As to issue (3), Appellant is not entitled to relief. *See United States v. Anderson,* 83 M.J. 291 (C.A.A.F. 2023) (holding that a military accused does not have a right to a unanimous verdict under the Sixth Amendment, the Fifth Amendment's due process clause, or the Fifth Amendment's component of equal protection[7]), *cert. denied*, 144 S. Ct. 1003 (2024).

We have carefully considered issue (4). As recognized in *United States v. Lepore,* 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc), this court lacks the authority to direct modification of the 18 U.S.C. § 922(g) prohibition noted on the staff judge advocate's indorsement. *See also United States v. Vanzant*, __ M.J. __, No. ACM 22004, 2024 CCA LEXIS 215, at \*24 (A.F. Ct. Crim. App. 28 May 2024) (concluding that "[t]he firearms prohibition remains a collateral consequence of the conviction, rather than an element of findings or sentence, and is therefore beyond our authority to review").

With respect to issues (5), (6), and (7), we have carefully considered Appellant's contentions and find they do not require discussion or warrant relief. *See United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987).

After considering the remaining issue (1) of factual and legal sufficiency, we find no error that materially prejudiced a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Appellant and WMB were co-workers stationed together at Joint Base Langley-Eustis, Virginia. On the evening of 3 July 2021, WMB, Appellant, and some fellow co-workers—BL, LC, and QG—went out to a local bar. At one point in the evening Appellant stood in front of WMB and asked if she was trying to give him "head." WMB testified that she understood the term "head" to mean

---

[6] Under the most recent changes to Article 66(d)(1)(A), UCMJ, this court "may affirm only such findings of guilty as the Court finds correct in law, and in fact." 10 U.S.C. § 866(d)(1)(A); *see also* The National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116-283, § 542(b)(1)(A), 134 Stat. 3388, 3661–62 (1 Jan. 2021).

[7] U.S. CONST. amends. V, VI.

oral sex. WMB tried to laugh it off to defuse the situation and said "no." At that time, WMB was sitting down, and Appellant was standing in front of her with his groin at her eye level. At trial WMB testified that she was not sure if Appellant was joking when, as she interpreted, he asked her for oral sex. She stated she did not want to escalate the situation by being aggressive toward Appellant, which caused her to discuss the situation with QG and suggest they leave because Appellant was "getting kind of drunk."

During the ride home from the bar, WMB sat in the middle backseat with Appellant to her left and QG to her right. While in the car, Appellant put his right arm around WMB and stated he really wanted her to give him "head." WMB testified that Appellant whispered in her ear and said, "I am being dead a[*]s. I really want head." WMB took this to mean that Appellant was serious about his request. WMB again told Appellant "no." Subsequently, Appellant grabbed the back of WMB's neck and pushed her head toward his groin. WMB was able to resist and pushed herself away, but before she could say anything to stop him, Appellant grabbed her again and, with more force, pushed her head back towards his groin. WMB explained at trial that it was a lot harder for her to push away the second time. She also described that this time her cheek touched what WMB believed to be Appellant's crotch because she could feel his zipper.

WMB then explained how she used her hand to alert QG, who was leaning over the front seat, to the situation. QG testified that he remembered WMB asking Appellant on the ride home "why is [his] d[**]k out" but did not notice anything alarming at that point. Shortly thereafter, QG stated he heard WMB in a "panicked" state tell Appellant to "get the f[**]k off" her. That was when QG noticed what was going on and intervened to get Appellant to let go of WMB. Specifically, on this point, QG stated that he saw Appellant's hand on the back of WMB's head and that Appellant was trying to force WMB's head down onto his lap. After QG intervened, WMB started yelling at Appellant and attempted to hit him with her hands. Because of the commotion in the back seat the driver, BL, stopped the car at a convenience store. When Appellant exited the vehicle, WMB and LC noticed that Appellant's pants were unzipped, and his underwear was visible. BL then took Appellant home and left QG, LC, and WMB at the convenience store. A friend of LC's came by and gave LC, QG, and WMB a ride home.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

On appeal, Appellant contends his conviction is legally and factually insufficient. Specifically, Appellant makes two arguments: (1) that the Government alleged Appellant committed specific act—penetrating WMB's mouth with his

penis—in an attempt to commit a sexual assault, and failed to prove that specific act occurred; and (2) that the Government failed to prove beyond a reasonable doubt that Appellant intended to sexually assault WMB without her consent. Appellant requests we set aside the findings and sentence. We disagree with Appellant's contentions and find no relief is warranted.

### 1. Additional Background

The attempted sexual assault without consent of WMB (Charge I and its Specification) provided that Appellant: "did, at or near Newport News, Virginia, on or about 4 July 2021, attempt to commit a sexual act upon [WMB] by penetrating her mouth with his penis without her consent."

During findings instructions related to Charge I and its Specification, the military judge provided the following instructions to the court members:

> Charge I, Attempt, Sexual Assault without Consent. That, at or near Newport News, Virginia, on or about 4 July 2021, the accused did a certain overt act[ ], that is: attempt to commit a sexual act upon [WMB] by penetrating her mouth with his penis without her consent; That the act was done with specific intent to commit the offense of sexual assault without consent; That the act amounted to more than mere preparation, that is, it was substantial, excuse me, it was a substantial step and a direct movement toward the commission of the intended offense; and that such act apparently tended to bring about the commission of the offense of sexual assault without consent, that is, the act apparently would have resulted in the actual commission of the offense of sexual assault without consent except for [WMB's] physical and or verbal protestation, which prevented completion of that offense.

The military judge then instructed the members on preparation as follows:

> Preparation consists of devising or arranging the means or measures necessary for the commission of the attempted offense. To find the accused guilty of this offense, you must find beyond a reasonable doubt that the accused went beyond preparatory steps, and his act amounted to a substantial step and a direct movement toward the commission of the intended offense. A substantial step is one that is strongly corroborative of the accused's criminal intent and is indicative of his resolve to commit the offense.

**2. Law**

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

The National Defense Authorization Act for Fiscal Year 2021 significantly changed how CCAs conduct factual sufficiency reviews. Pub. L. No. 116-283, § 542(b)(1)(B), (c), 134 Stat. 3388, 3612 (1 Jan. 2021). "Congress undoubtedly altered the factual sufficiency standard in amending the statute, making it more difficult for a [CCA] to overturn a conviction for factual sufficiency." *United States v. Harvey*, 83 M.J. 685, 691 (N.M. Ct. Crim. App. 2023), *rev. granted*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 13 (C.A.A.F. 10 Jan. 2024). Previously, the test for factual sufficiency required the court, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, to be convinced of the appellant's guilt beyond a reasonable doubt before it could affirm a finding. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we [took] 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required

element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (second alteration in original) (quoting *Washington*, 57 M.J. at 399).[8]

The current version of Article 66(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), *the Court is clearly convinced that the finding of guilty was against the weight of the evidence*, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(1)(B) (emphasis added).

"[T]he finder of fact at the trial level is always in the best position to determine the credibility of a witness." *United States v. Peterson*, 48 M.J. 81, 83 (C.A.A.F. 1998).

Appellant was charged with attempted sexual assault of WMB without consent, which required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant did a certain overt act; (2) that such act was done with the specific intent to sexually assault WMB by penetrating her mouth with Appellant's penis without her consent, an offense in violation of

---

[8] The court is mindful that there are contours of the new factual sufficiency review standard that arguably could impact applications of the rule as discussed by this court and our sister service courts. *See United States v. Coe*, __ M.J. __, 2024 CCA LEXIS 52, at *15 (A. Ct. Crim. App. 1 Feb. 2024) (en banc); *Harvey*, 83 M.J. at 685; *see also United States v. Csiti*, No. ACM 40386, 2024 CCA LEXIS 160, at *11 (A.F. Ct. Crim. App. 29 Apr. 2024) (unpub. op.). These contours are not dispositive in this particular case as the evidence does not make factual sufficiency of the conviction a close call. Even if we applied our previous factual sufficiency review standard, we would not grant relief as we ourselves are convinced of Appellant's guilt of the specification at issue beyond a reasonable doubt.

Article 120, UCMJ; (3) that such act amounted to more than mere preparation; that is, it was a substantial step and a direct movement toward the sexual assault of WMB; and (4) that the act apparently tended to effect the commission of the intended offense. *See* 10 U.S.C. § 920; *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 4.b. That is, the act apparently would have resulted in the actual commission of the offense of sexual assault without consent except for a circumstance unknown to Appellant or an unexpected intervening circumstance which prevented completion of that offense. *See Military Judges' Benchbook,* Dept. of the Army Pamphlet 27-9 at 1017–18 (12 Apr. 2024).

The elements to the underlying offense of sexual assault without consent in this case are: (1) that Appellant committed a sexual act upon WMB, by penetrating WMB's mouth with Appellant's penis; and (2) Appellant did so without WMB's consent. 2019 *MCM*, pt. IV, ¶ 60.b.(2)(d).

In charging an attempted offense under the UCMJ, it is not necessary to allege the overt act or the elements of the underlying predicate, or target offense, as long as the accused is adequately on notice of the nature of the offense. *United States v. Norwood*, 71 M.J. 204, 206–07 (C.A.A.F. 2012) (citations omitted).

### 3. Analysis

Regarding the offense of which Appellant was convicted, we find the Government introduced sufficient evidence of Appellant's guilt during his court-martial.

In the court's view, the most significant evidence came directly from the victim, WMB, who described in convincing detail, the progression of Appellant's actions on the night of the offense. WMB testified that Appellant requested oral sex from her on one occasion while at the bar, and a couple more times on the car ride home. She also testified that he told her he was serious about his desire for her to perform oral sex on him. Additionally, WMB testified that she told Appellant "no" while at the bar, and also told him "no" multiple times in the car. WMB's testimony was sufficiently clear that after she rejected him, Appellant grabbed the back of her neck and forced her head into his groin close enough to his penis that her cheek pressed against the zipper of his pants. WMB explained that when she resisted, he applied more force to her neck. WMB described how she had to get the attention of QG to break free of Appellant's grasp. We find WMB's testimony alone is sufficient to support conviction for the charged offense. As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to testify credibly. *See United States v. Rodriguez-Rivera,* 63 M.J. 372, 383 (C.A.A.F. 2006) (holding that the testimony of a single witness may satisfy the Government's burden to prove

every element of a charged offense beyond a reasonable doubt (citations omitted)).

That stated, there was also evidence presented that corroborated crucial portions of WMB's testimony, including testimony from QG who witnessed Appellant's actions in the back seat of the car and intervened on WMB's behalf. QG also testified that he had to restrain WMB in the backseat of the car as she was attempting to hit Appellant. Additionally, testimony from LC also corroborated WMB's testimony that Appellant's pants were unzipped and his underwear was visible when Appellant exited the car. Finally, there was testimony from multiple witnesses who testified that after they stopped at the convenience store, they observed WMB was upset with Appellant.

Appellant's first contention on appeal is that the wording in the specification required the Government to prove that Appellant attempted to commit a sexual act upon WMB *by penetrating her mouth with his penis without her consent*. Specifically, Appellant argues that the highlighted language denotes the overt act element, meaning the Government was required to prove that Appellant actually penetrated WMB's mouth with his penis.[9] We disagree and find that the language in the specification was designed to, and did in fact, place Appellant on notice of the nature of the underlying predicate offense—that he attempted to sexually assault WMB without her consent.

Additionally, Appellant argues that the Government did not sufficiently prove that Appellant intended to have WMB perform oral sex on him without her consent. Again, as we highlighted *supra,* both direct and circumstantial evidence were presented at trial including testimony from WMB that she clearly communicated her lack of consent to Appellant, and that, after she communicated her lack of consent, Appellant grabbed the back of her neck and forced her head towards his groin.

We conclude that viewing the evidence in the light most favorable to the Prosecution demonstrates that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. As to the factual sufficiency of this offense, Appellant properly made a request for a factual sufficiency review by asserting a specific showing of a deficiency of proof as required under Article 66(1)(B)(i), UCMJ, *supra.* However, having given appropriate deference to the fact that the court members saw and heard the witnesses and other evidence, the court is not clearly

---

[9] Appellant's argument is essentially that we should conclude that the Government was required to prove the completed offense before we can find the conviction for the attempted offense factually sufficient. We decline to view the specification or the evidence in that light.

convinced that the finding of guilty was against the weight of the evidence. Thus, the finding is factually sufficient.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

FLEMING E. KEEFE, Capt, USAF
Acting Clerk of the Court