# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40561

————————————

### UNITED STATES
*Appellee*

**v.**

### Johnathon T. HAGEN
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 May 2025

————————————

*Military Judge*: Sterling C. Pendleton.

*Sentence*: Sentence adjudged 27 July 2023 by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 5 September 2023: Dishonorable discharge, confinement for 14 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Brittany M. Speirs, USAF; Captain Heather R. Bezold, USAF; Captain Morgan L. Brewington, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to pleas, of one specification of possession of child pornography and one specification of viewing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Appellant was sentenced to a dishonorable discharge, confinement for 14 months, reduction in grade to E-1, and a reprimand. Appellant requested deferment of the reduction in rank, confinement, and automatic forfeitures. The convening authority denied Appellant's requested deferments, took no action on the findings, and approved the sentence in its entirety.

Appellant raises 14 issues on appeal which we have rephrased and reordered: (1) whether the convening authority's selection of potential court members was proper; (2) whether the military judge abused his discretion when he admitted a report from the National Center for Missing and Exploited Children (NCMEC) over trial defense counsel's objection; (3) whether the application of 18 U.S.C. § 922 to Appellant warrants correction; (4) whether the guilty findings are legally and factually sufficient; (5) whether the military judge abused his discretion in denying Appellant's motion to dismiss or abate the proceedings due to investigators not making a timely request of a private entity to preserve potential evidence; (6) whether the military judge abused his discretion in denying Appellant's motion to suppress Appellant's statements to the investigators; (7) whether the military judge abused his discretion in denying Appellant's motion to exclude character evidence; (8) whether the military judge abused his discretion in denying Appellant's motion to compel an expert pediatrician; (9) whether the military judge abused his discretion in denying Appellant's motion to compel discovery; (10) whether the military judge abused his discretion in denying Appellant's motion asserting an unreasonable multiplication of charges; (11) whether the military judge abused his discretion in permitting Appellant's supervisor to testify in sentencing about Appellant's pretrial statements related to potential punishment by the court-martial; (12) whether the military judge abused his discretion in declining to consider a statement in one of Appellant's sentencing character letters; (13) whether the record is complete without the required documents from the Article 30a, UCMJ, 10 U.S.C. § 830a, proceedings; and (14) whether Appellant is entitled to relief for post-trial processing delay.[2]

---

[1] All references to the punitive articles of the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant raises issues (4)–(14) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

We have carefully considered Appellant's allegations of error in issue (3) as well as issues (5) through (12) and find they do not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

Regarding issue (13), the original record of trial (ROT) submitted to the court neglected to include documents related to the Article 30a, UCMJ, proceedings in this case. On 18 February 2025, Appellee moved to attach the missing documents to the record. We granted that motion. As the ROT now has these documents attached, Appellant is not prejudiced and therefore, not entitled to relief on this issue.[3]

As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

In December 2021, an Internet cloud storage company, Dropbox, forwarded to the NCMEC multiple digital files that were uploaded to their service from a certain account on or about 11 October 2021. As a result of this report, NCMEC sent a notification to German law enforcement officials. Those law enforcement officials notified the Air Force Office of Special Investigations (OSI) at Ramstein Air Base, Germany. Subsequent investigation by OSI agents revealed that Appellant was the suspected owner of the account.

In early January 2022, OSI agents and German law enforcement came to Appellant's workplace. They conducted a field interview of Appellant asking if he was involved in child pornography. Appellant initially denied having anything to do with child pornography. The German investigator confronted Appellant with the evidence they had received so far, and Appellant admitted involvement.

Investigators proceeded to search Appellant's vehicle and his office. After those searches were completed, they searched his residence. At some point following the searches, investigators conducted a sit-down interview with Appellant. During this interview, Appellant provided detailed explanations about

---

[3] The ROT contained a compact disc purporting to be Prosecution Exhibit 3, the recording of Appellant's interview with the Office of Special Investigations. However, the originally included disc did not include any digital files. We issued a show cause order and as a result, the Government moved to attach two compact discs containing a recording of the interview and the accompanying declaration. We granted that motion. Because the recorded interview is now correctly placed on a compact disc and is available, Appellant is not prejudiced by the initial failure to include the recording.

how he became involved with viewing and possessing child pornography as well as how he obtained, viewed, and possessed this material.

## II. DISCUSSION

### A. Court Member Selection

#### 1. Additional Background

Before convening Appellant's court-martial, the convening authority was provided with the names of 34 potential court-martial members. Of those 34, 9 had names that suggested they may be female. The convening authority detailed 21 of the 34 personnel to serve as members on Appellant's court-martial. Included among the 21 members were 8 members whose names suggested they may be female. The other 13 members had traditionally male names. In selecting the members to serve on the panel, the convening authority's memorandum stated, "[B]y reason of their age, education, training, experience, length of service, and judicial temperament under Article 25, UCMJ, [10 U.S.C. § 825,] I nominate the following individuals to serve as members in [Appellant's court-martial]." The detailing of these members was memorialized on the convening order, Special Order A-41.

Prior to the court-martial, two amendments to the convening order were issued, Special Orders A-46 and A-47. As a result of these amendments, the venire consisted of 14 members, including five with traditionally female names.

Following voir dire at trial, without objection, trial counsel challenged two members, one with a traditionally male name and one with a traditionally female name. Those challenges were granted. Trial defense counsel challenged one additional member; that member had a traditionally male name. Trial counsel declined to exercise a peremptory challenge. Trial defense counsel utilized their peremptory challenge. The challenged member had a traditionally male name. The final panel composition was four members with traditionally male names and four members with traditionally female names.

The Defense did not object to the convening authority's court member selection process prior to his appeal before this court.

#### 2. Law

Court-martial composition issues not raised at trial are forfeited and reviewed on appeal for plain error. *United States v. King*, 83 M.J. 115, 120–21 (C.A.A.F. 2023), *cert. denied*, 144 S. Ct. 190 (2023). Under the plain error standard of review, the "[a]ppellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F.

2018) (citation omitted). In undertaking a plain error analysis, we "consider whether the error is obvious at the time of appeal, not whether it was obvious at the time of the court-martial." *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008).

"When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(e)(2), UCMJ, 10 U.S.C. § 825(e)(2).

In *United States v. Crawford*, the United States Court of Military Appeals held the intentional selection of African American servicemembers to serve on courts-martial in order to ensure fair representation of the community was consistent with constitutional guarantees of equal protection. 35 C.M.R. 3, 13 (C.M.A. 1964); *see also United States v. Smith*, 27 M.J. 242, 249 (C.M.A. 1988) ("[A] commander is free to require representativeness in his court-martial panels and to insist that no important segment of the military community—such as blacks, Hispanics, or women—be excluded from service on court-martial panels.").

In *Batson v. Kentucky*, the United States Supreme Court held a criminal defendant "ha[s] the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria," and in particular "the Equal Protection Clause[4] forbids the prosecutor to challenge potential jurors solely on account of their race" through the exercise of peremptory challenges. 476 U.S. 79, 85–86, 89 (1986).

In *United States v. Jeter*, the United States Court of Appeals for the Armed Forces (CAAF) overruled *Crawford* in light of *Batson*, holding "[i]t is impermissible to exclude or intentionally include prospective members based on their race." 84 M.J. 68, 73 (C.A.A.F. 2023). The CAAF explained, "whenever an accused makes a prima facie showing that race played a role in the panel selection process at his court-martial, a presumption will arise that the panel was not properly constituted," which the Government may then attempt to rebut. *Id*. at 70. In *Jeter*, "trial defense counsel challenged the makeup of the panel, citing a 'systematic exclusion of members based on race and gender.' The military judge noted that '[i]t appears that [the panel] is all white men' . . . ." *Id*. at 71 (alterations in original). On appeal, the CAAF found the appellant had made a "prima facie showing that gives rise to a presumption that race was allowed to enter the selection process." *Id*. at 74. In support of this conclusion, the CAAF cited "racial identifiers" that were included in court member

---

[4] U.S. CONST. amend. XIV.

questionnaires provided to the convening authority, as well as "other evidence before the [Courts of Criminal Appeals (CCA)]," and "the command's understandable belief that the *Crawford* case . . . was still good law." *Id.* Among this other evidence before the CCA was information that "two African American members on the original convening order were subsequently removed pursuant to the first amendment to the convening order; and three other courts-martial with African American accuseds were convened by this convening authority before all-white panel members." *Id.* In addition, the CCA obtained declarations from the convening authority and staff judge advocate, but "for all intents and purposes those affidavits simply reflected that they could not recall how the venire panel was chosen." *Id.* Under these circumstances, the CAAF found an "unrebutted inference that [a]ppellant's constitutional right to equal protection under the law was violated when the acting convening authority presumptively used a race-conscious selection process for panel members." *Id.*

### 3. Analysis

Because Appellant did not object to the convening authority's selection of court members at trial, we review for plain error. *See King*, 83 M.J. at 120–21. For the reasons stated below, we conclude Appellant has failed to demonstrate plain error.

Appellant claims that he has made a prima facie showing that gives rise to a presumption that impermissible criteria was allowed to enter the court member selection process. Appellant claims that the documentation regarding the selection of court members fails to rebut this presumption because "none of it indicates the convening authority did not consider gender of the potential members."

As an initial matter, although *Jeter* specifically addressed racial discrimination, we assume for purposes of our analysis the same rationale applies to the selection or exclusion of members based on gender. This question was addressed in *J.E.B. v. Ala. ex rel. T.B.*, where the Supreme Court held that "gender—like race—is an unconstitutional proxy for juror competence and impartiality." 511 U.S. 127, 128 (1994); *see also United States v. Patterson*, No. ACM 40426, 2024 CCA LEXIS 399, at *20–21 (A.F. Ct. Crim. App. 27 Sep. 2024) (unpub. op.) (holding that "*J.E.B.* essentially put gender on the same constitutional footing as race").

We are not persuaded Appellant has met his burden to demonstrate "clear" or "obvious" error in the selection process. The Government argues that providing the convening authority some professional and personal information about potential court members, including race and gender, does not in itself constitute a prima facie showing that the convening authority improperly relied on race or gender in selecting members under the plain error standard of review.

We agree. As our superior court stated in *Jeter*, "racial identifiers are neutral, [although] capable of being used for proper as well as improper reasons." 84 M.J. at 74 (citing *United States v. Loving*, 41 M.J. 213, 285 (C.A.A.F. 1994)).

The circumstances in *Jeter* are distinguishable in several significant ways. First, and importantly, the appellant in *Jeter* did not forfeit the issue but challenged the selection process at trial, alleging "systematic exclusion of members based on race and gender." 84 M.J. at 71. Moreover, the record in *Jeter* indicated the panel was composed entirely of "white men." *Id*. Two African American members on the original convening order were subsequently removed from the panel by the convening authority. *Id*. at 74. We are not persuaded that there is anything in the apparently routine replacement of potential court members through the issued amendments that indicates a systematic exclusion of members based on gender. Second, in *Jeter* "three other courts-martial with African American accuseds were convened by [the same] convening authority before all-white panel members." *Id*. The CAAF concluded these circumstances in *Jeter*, coupled with the provision of racially identifying information to the convening authority, were sufficient for a prima facie showing under ordinary standards of review. In the instant case, we do not have equivalent circumstances.

Furthermore, we decline to expand and apply the holding in *Jeter* in such a way that could undermine the applicable federal statute. Essentially, Appellant is arguing that a convening authority cannot even know the name of any potential court member prior to making selections of the court members as such names could potentially reveal their genders. Practically, such a limitation upon convening authorities could prevent their ability to properly apply the criteria mandated for consideration by Article 25, UCMJ. For example, it would be quite a challenge for a convening authority to determine whether a potential court member, "in his opinion, [is] best qualified for the duty by reason of . . . judicial temperament" if he or she cannot know who they are evaluating. Article 25(e)(2), UCMJ, 10 U.S.C. § 825(e)(2).

Appellant has the burden to demonstrate "clear" or "obvious" error. He has not met this burden. Based on the facts of this case, we conclude Appellant is not entitled to relief on this issue.

## B. NCMEC CyberTipline Report

### 1. Additional Background

On 12 October 2021, Dropbox submitted information to NCMEC via the "CyberTipline." Information submitted included: Dropbox submitter information; where to find Dropbox's terms of service; "incident information" such as date and time of the file uploads, email address, screen name, user ID and four IP addresses; information related to five digital files including names,

identifying information and yes/no indications to whether Dropbox viewed entire contents of the uploaded files, whether the contents of the files were publicly available and whether the metadata was provided separately by Dropbox; and information related to the country, region, city, and Internet service provider of the IP addresses noted earlier in the report. In response to this submission and based on the information provided, NCMEC compiled a CyberTipline report and forwarded the report to law enforcement.[5]

In a pretrial motions hearing, trial defense counsel moved to suppress the CyberTipline report. The military judge received evidence and heard argument on the motion. He found that "NCMEC staff cannot alter or change information submitted by a reporting party to the CyberTipline."

Trial counsel submitted a business record affidavit from the records custodian from Dropbox. The custodian affirmed that the information in Dropbox's CyberTip was accurate and met the other requirements for admission pursuant to Mil. R. Evid. 803(6).

The military judge denied the motion to suppress, finding that the information referenced above was machine-generated and therefore not hearsay, nor testimonial in nature.

At trial, the CyberTipline report was admitted. No representative from NCMEC or Dropbox testified.

### 2. Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004) (footnote omitted).

"[A] statement is testimonial if 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Sweeney*, 70 M.J. 296, 301 (C.A.A.F. 2011) (quoting *United States v. Blazier*, 68 M.J. 439, 442 (C.A.A.F. 2010)). "[M]achine-generated data and printouts are not statements and thus not hearsay -- machines are not declarants -- and such data is therefore not 'testimonial.'" *United States v. Blazier*, 69 M.J. 218, 224 (C.A.A.F. 2010) (footnote and citations omitted). Chain of custody documents may also be non-testimonial. *United States v. Tearman*, 72 M.J. 54, 61 n.13 (C.A.A.F. 2013).

---

[5] Additional information was contained in the report, but as this information was redacted from the admitted exhibit, we decline to enumerate it here.

"Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

"To rank as testimonial, a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution." *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) (internal quotation marks and citations omitted).

When deciding whether a statement is testimonial, we look objectively at the totality of the circumstances and particularly consider three factors to guide this contextual analysis: (1) whether the statement was "elicited by or made in response to law enforcement or prosecutorial inquiry;" (2) whether the statement involved "more than a routine and objective cataloguing of unambiguous factual matters;" and (3) whether "the primary purpose for making or eliciting the statement[ ] was the production of evidence with an eye toward trial." *United States v. Rankin*, 64 M.J. 348, 352 (C.A.A.F. 2007); *see also United States v. Squire*, 72 M.J. 285, 288 (C.A.A.F. 2013) (citations omitted).

"The proponent of the evidence has the burden of demonstrating that the evidence is admissible." *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020).

We review a military judge's ruling on the admission or exclusion of evidence for an abuse of discretion. *United States v. Katso*, 74 M.J. 273, 278 (C.A.A.F. 2015) (footnote omitted). Whether a statement is testimonial for purposes of the Sixth Amendment is a question of law we review de novo. *United States v. Baas*, 80 M.J. 114, 120 (C.A.A.F. 2020) (citation omitted).

Where a confrontation clause objection is preserved and we find error, we will grant relief unless the error was harmless beyond a reasonable doubt, considering such factors as: (1) "the importance of the unconfronted testimony in the prosecution's case;" (2) "whether that testimony was cumulative;" (3) "the existence of corroborating evidence;" (4) "the extent of [cross-examination] permitted;" and (5) "the strength of the prosecution's case." *Sweeney*, 70 M.J. at 306 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 683 (1986)).

### 3. Analysis

Appellant challenges the military judge's ruling denying the motion to suppress the CyberTipline report. He argues that the report contained testimonial hearsay and that its admission created prejudicial error. We disagree.

We begin this analysis mindful of the United States Supreme Court's recognition that "[b]usiness and public records are generally admissible absent

confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324. Here, the military judge correctly found that this report was a business record and admissible as such. Our review of the record and of the report indicate that nearly all of the information was automatically generated and, once generated, unmodifiable by NCMEC personnel. The remaining information was simply not testimonial, but rather routine information commonly associated with chain-of-custody type of documentation. *Tearman*, 72 M.J. at 61 n.13.

The singular exception to this conclusion may be the information associated with the digital files: "Were the contents of uploaded file publicly available? Yes." Appellant correctly notes that in a recent case, this panel of the court found this information in a NCMEC CyberTipline report testimonial. *United States v. Goodwater*, No. ACM 40304 (f rev), 2024 CCA LEXIS 493, at *9 (A.F. Ct. Crim. App. 22 Nov. 2024) (unpub. op.). However, *Goodwater* is distinguishable from Appellant's case. First, in *Goodwater*, the trial counsel, as the proponent of the evidence, failed to meet their burden to establish that this information was not testimonial. They failed to elicit evidence that NCMEC personnel did not have the ability to modify the information. Second, in *Goodwater*, the appellant was convicted of distributing child pornography based on a theory that the files were made publicly available. Yet, the Government failed to produce a live witness to prove this determinative fact. Rather, they relied heavily on the CyberTipline report's note that the files were publicly available. Here, Appellant was not charged with distribution. Thus, whether the files were or were not publicly available was wholly irrelevant to the case in findings.[6] Here, the military judge did not abuse his discretion when he determined that this statement was not testimonial.

Assuming arguendo that any of the information provided in the CyberTipline report was testimonial, we have no problem concluding that the admission was harmless beyond a reasonable doubt. As noted below addressing the factual and legal sufficiency of the convictions, the other evidence admitted in this case was overwhelming. The report itself was unimportant in light of that remaining evidence. Some of it was cumulative to Appellant's detailed confession and the forensic findings on Appellant's devices. Moreover, trial defense counsel was provided extensive opportunity to cross-examine the investigator

---

[6] This fact could be relevant in the presentencing proceedings. However, that does not support a conclusion of harm to this Appellant as the Confrontation Clause does not apply to presentencing proceedings in a non-capital court-martial. *United States v. McDonald*, 55 M.J. 173, 174 (C.A.A.F. 2001).

and digital forensics examiner in the case. In sum, we are convinced beyond a reasonable doubt that the CyberTipline did not contribute to Appellant's conviction. *Van Arsdall*, 475 U.S. at 683.

## C. Legal and Factual Sufficiency

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United Robinson*, 77 M.J. at 297–98 (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citations omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). Ultimately, this court's legal sufficiency analysis "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

For trials involving any convicted offenses committed before January 2021, "[t]he test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (third alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) (construing the pre-January 2021 version of Article 66, UCMJ, 10 U.S.C. § 866)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

Appellant was convicted of wrongful possession of child pornography, in violation of Article 134, UCMJ, which required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant knowingly and wrongfully possessed child pornography, to wit: digital images of minors, or what appear to be minors, engaging in sexually explicit conduct; and (2) that under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 95.b.(1).

Appellant was also convicted of wrongful viewing of child pornography, in violation of Article 134, UCMJ, which required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant knowingly and wrongfully viewed child pornography, to wit: digital images of minors, or what appear to be minors, engaging in sexually explicit conduct; and (2) that under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 95.b.(1).

**2. Analysis**

Appellant challenges his convictions for both possessing and viewing child pornography, asserting that they are legally and factually insufficient. Underlying these challenges, he argues that because a representative from Dropbox did not testify to confirm that the images recovered were in fact the same files flagged by Dropbox and that the original evidence was not preserved for comparison, the convictions were insufficient. We disagree.

Forensic examination of his devices revealed that Appellant had a digital folder containing multiple digital files with names indicative of child pornography. That folder was itself named, "for my eyes only." Further, forensic examination of the devices revealed that Appellant had installed a web browser specifically designed to navigate the dark web. In that browser was a bookmark to a website that was titled with words indicative of child pornography.

Most significantly, Appellant, in a recorded interview with investigators, provided comprehensive information proving unequivocally his guilt of these offenses. He gave explanations as to why he became "curious" about the "enticing" child pornographic material. He described how he downloaded and installed the specific, dark web navigation web browser. He stated that he searched out child pornography on the dark web, took a screenshot, and saved the material to his Dropbox account. Moreover, he provided detailed descriptions of the boys aged between 8 and 11 years old engaged in specific sexual acts that he viewed in these images.

While a representative from Dropbox did not testify and provide a comparison between images that initially triggered this investigation and the images

submitted as evidence in this case, the evidence of Appellant's guilt was still overwhelming in its absence.

Viewing the evidence in the light most favorable to the Government, we conclude a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt of both offenses beyond a reasonable doubt. *See Rodela*, 82 M.J. at 525.

## D. Post-Trial Delay

### 1. Law

"Due process entitles convicted service members to a timely review and appeal of court-martial convictions." *United States v. Moreno*, 63 M.J. 129, 132 (C.A.A.F. 2006) (citing *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004)). Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citation omitted); *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

A presumption of unreasonable delay arises when the case is docketed more than 150 days from an appellant being sentenced. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citation omitted). A presumptively unreasonable delay triggers an analysis of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

A CCA may provide appropriate relief for excessive post-trial delay. Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). Appropriate relief is not synonymous with meaningful relief. *United States v. Valentin-Andino*, __ M.J. __, No. 24-0208, 2025 CAAF LEXIS 248, at *7 (C.A.A.F. 31 Mar. 2025). Additionally, "[a]lthough it is within a Court of Criminal Appeal's discretion to place its reasoning about Article 66(d)(2) relief on the record, it is not required to do so." *Id.* (citing *United States v. Winckelmann*, 73 M.J. 11, 16 (C.A.A.F. 2013)).

### 2. Procedural Background and Analysis

Appellant was sentenced on 27 July 2023. The case was docketed with the court on 26 January 2024. The delay in docketing, a total of 183 days, is presumptively unreasonable.

The primary drivers of delay in the processing of this ROT were the 111 days for the court reporter to complete the transcript and the 56 days for the completed ROT to make its way to the court for docketing. Neither timeframe reflects positively on the Government.[7] However, after evaluating each time period individually and in the aggregate with the other days utilized for post-trial processing, we conclude there is no due process violation created by the delay.

Notably, Appellant did not assert his right to timely appellate review. He did not claim prejudice on this issue, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, we likewise find no due process violation. *See Toohey*, 63 M.J. at 362.

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, in the absence of a due process violation. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority to grant relief

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.

---

[7] The court notes that there was approximately 73 standard duty days encompassed in that 111 days (excluding holidays, weekends, and associated pass days). The transcript in this case is 817 pages. Thus, it appears the court reporter completed on average fewer than 12 pages per day, well below the general guideline set in Department of the Air Force Manual 51-203, *Records of Trial,* ¶ 14.14 (21 Apr. 2021): "As a general guideline, one hour of in-court proceedings should take no more than five hours to transcribe and, in more complex cases, no more than seven hours to transcribe."

Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court